Case No. 25-5130, Jorge Andujar v. Hub Group Trucking Inc. Oral argument, 15 minutes per side. Mr. Lichten for the appellants. And I reserve two minutes, Your Honor. May it please the Court. My name is Harold Lichten. I have the great pleasure of representing the plaintiffs in this case. Your Honors, there are four independent reasons why this Court should reverse the decision of the District Court. First and foremost, New Jersey clearly has a materially greater interest in this matter than does Tennessee. And since the District Court already found that it would violate the public policy of New Jersey to apply Tennessee law to these New Jersey drivers, the choice of law clause is unenforceable. You're not challenging the forum, are you? The choice of forum? No, the rules... Under your view, this case would go forward as a New Jersey wage and hour case, but in federal court in Memphis? Yes, that's correct, because the forum selection clause, the rules on determining whether a forum selection are different than choice of law, because it's assumed that any court can apply the law of another state properly if properly researched. Regardless of whether Tennessee has adopted the restatement standard that a choice of law will not be enforced, where to do so would violate the public policy of the state that, quote, has a materially greater interest in the determination of the particular issue, that's the restatement standard, or the standard which the defendant and the court argue for, the plaintiffs must demonstrate that New Jersey has a materially greater interest, quote, unquote, in the matter. Under either formulation of the standard, New Jersey, where the plaintiffs work, reside, which is vigorously legislated and regulated against the misclassification of workers, unquestionably has a materially greater interest. Can you explain how... Okay, so under the Tennessee standard, and I don't think they've adopted the restatement, but we can go back and forth on that if you want, but the law of the jurisdiction of the parties choosing must not be contrary to a fundamental policy of the state, blah, blah, blah, materially greater interest. So let's assume that New Jersey has a greater interest because all the workers are in New Jersey, and this is a New Jersey wage and hour claim, whatever. What is the fundamental policy that it would be contrary to to apply Tennessee law? Sure. I'm happy to address that, but I would suggest that the district court was satisfied that we had made that showing. We spent approximately 20 pages in the district court showing that New Jersey has made the misclassification of workers as independent contractors a fundamental issue. They've passed criminal laws prohibiting it. They've issued reports saying that it's costing them $500 million a year to allow the misclassification of workers. It's written reports saying that their unemployment contribution funds and their worker compensation funds get depleted when companies don't treat the workers as employees. They've also said that it hurts the other legitimate businesses in New Jersey to allow independent contractor misclassification because then the delivery companies that play by the rules and have their people be employees are undercut. What's the difference between the way Tennessee does it and the way New Jersey does it? Tennessee has literally no protection. So, for example, they recently passed a law, and this is in our brief, outlawing lease carriers from the protection of the wage regulations. Tennessee has no private right of action under its wage regulations. Tennessee has no rule or law prohibiting deductions as long as someone authorizes the deductions, whereas New Jersey says you can't deduct money, period, with certain exceptions that aren't applicable here. Tennessee has no overtime provision for drivers, whereas New Jersey is one of the few states that lets drivers, even with trucks over 10,001 pounds, collect overtime. It sounds like you're saying that the law is different, but the question is really whether Tennessee law violates a fundamental policy of New Jersey law. How the differences in the law necessarily mean that Tennessee law is contrary to New Jersey public policy? Yes, again, although the court accepted this proposition, so this wasn't the majority of our briefing, I think the question is whether New Jersey would find it a violation of its public policy to apply Tennessee law to these drivers, which is essentially saying these drivers would have no protection whatsoever. So the question is, would New Jersey find it offensive to allow these drivers to be treated as independent contractors and not be paid overtime and not be paid wages and have deductions when New Jersey law strictly outlaws that? New Jersey has taken great efforts and strides to make sure that workers in New Jersey are protected against this type of misclassification. You find a public policy in the statements and laws of the state involved. In New Jersey, and we set this out in our brief ad nauseum, New Jersey has spent a lot of time in the last five or ten years enacting laws to prohibit what they believe is a scourge of misclassification, especially of drivers as independent contractors. Do we have to wade into this public policy or materially greater interest if there is no material connection to Tennessee? No, you don't. So that was my second point, Your Honor. Second, and independently under the restatement, if Tennessee has no substantial relationship to this case, meaning, and I'm quoting from Goodwin, it has no direct and relevant connection with this transaction as required by Tennessee choice of law principles, then you would not enforce the Tennessee choice of law provision. Simply stated, in this case, Tennessee has no substantial connection to this case because all of the work, the residences of the workers, the goods being delivered have no connection to Tennessee. My clients go to either a rail yard or a terminal. Was one of the contracts signed in Tennessee, at least for one of your clients? Not exactly. One of the contracts my client signed in New Jersey, being in New Jersey, and a company representative signed it in Tennessee. That is the only connection that there is. But as other courts have held, and I would refer you to the Skywell, the Sky Sports case that the Tennessee Appeals Court, that's not enough, not nearly enough, to say that there is a substantial relationship. Because you look to, it's a geographical test, if you will. You look to where is the subject matter taking place? It's taking place in New Jersey. Where are the workers? They're in New Jersey. And this is very important, critical. Hub trucking is not headquartered in Tennessee. Headquarter has some operations in Tennessee, as it has in many other states. But it's headquartered in Illinois. And it's not incorporated in Tennessee. So the question is, what material connection does Tennessee really have to this case? And it really has none. The jobs my client are doing, they're picking up appliances and furniture at railroad yards in New Jersey, at the Kearney, New Jersey facility, and they're delivering them to the stores, Best Buy and the stores like that. There's no evidence that these goods, these merchandise, have any connection whatsoever to Tennessee. It's not like, and they haven't alleged that there's some hub going on, and the products are going to Tennessee, and then they're directly routed. That's not the case at all here. There's really no connection to Tennessee. And that's what Judge Mays found in the Robles case. So we're not treading on fresh ground. In 2016, he found that there was no material connection. But at that time, they had a better argument because Comtrak, which was headquartered in Tennessee, had just merged into Hub Trucking, which is a much bigger company. But by 2024, when this case arose, Comtrak, which was in Tennessee, hadn't been in business for 12 years. It had been merged in. Counsel, I'm struggling to see, I guess, how much the location of the headquarters matters if the test, as you're articulating it, is whether there's a material connection to, as you put it, this case. As I see it, you're articulating a test of material connection to this transaction or set of transactions. As I understand the district court's order, and we'll hear from your opposing counsel, there's maybe another view that the question is, is there a material connection to the business? And so if it's to the transaction, I don't understand why it's critical where the headquarters. We're actually just asking about the transaction. We're talking about two different things. So the public policy is one thing, whether it would violate the public policy. And I'm not addressing that. The question I was asked is about substantial relationship, which is the question on whether there's enough connection to New Jersey to even apply the standard. Many cases, to be fair, say that if the company is headquartered in one state, that is some evidence of a connection. Let me see if I can restate Judge Ritz's question. You're saying under the restatement, the test is substantial relationship to the parties or the transaction. But that's also verbatim from the Tennessee standard for substantial relationship. First of all, I don't understand why you don't want the Tennessee standard, because I actually think it's probably a better standard for you. But it says the jurisdiction whose law is to govern must vary material connection to the transaction. So my reading of Tennessee law would be, is there a material connection to this transaction? And I don't see how that can be satisfied here. But is there a substantial relationship to the parties? Maybe. Then we would get into a hub group buying this Tennessee company and all of that thing. So I guess you're saying you want that standard, though, right? You want the substantial relationship to the parties or the transaction standard to apply? No, Your Honor. I want to be clear. With respect to the public policy question, that is different. With respect to the substantial relationship question, which is the predecessor before you get to public policy. I understand that. What I'm saying is, do you want the restatement test, or are you acknowledging that Tennessee might have a different analysis than the restatement? I'm saying that, in fairness, they read almost verbatim. I don't see them as verbatim at all, and maybe I'm having trouble reading here. But one of them has a connection to the parties, and one of them says just the transaction. I mean, the parties, I don't know how that comes out here. The transaction seems pretty obvious to me. Am I wrong about that? No, Your Honor, and I was just going to quote to you that I believe the correct standard is that which is set forth by the Tennessee Supreme Court in Goodwin v. Leasing, and they said meaning that there is, quote, no direct and relevant connection with this transaction. So I agree with you, Your Honor. That's the standard that Tennessee has adopted. It's very similar to the restatement, and I must admit that there are some cases where they still look at where the company is headquartered, which is not an issue you have here because it's not headquartered in Tennessee, but some courts have looked at that issue. That's all I'm saying. The third point I want to make, Your Honors, is that based on the opinion of Judge Estabrook in Johnson v. Diacon, it's really irrelevant what the contract says because my clients here bring statutory claims in the state where they work. And as Judge Estabrook said in Johnson v. Diacon, which is a recent opinion of the Seventh Circuit, under that standard the choice of law provision in the agreement is irrelevant because the suit is brought under the state statute, not under the contract. We're bringing claims for overtime under the statute and for unlawful deductions, so it doesn't matter what the agreement says. It's a claim brought under the statute, and therefore there is no question of enforceability. And fourth, and I want to make this point, the fourth argument we're making, and I think this is relevant, is that the question is, would Tennessee actually apply Tennessee law to these out-of-state workers? And we've cited to you the Third Circuit decision in the Joseph Corey case. In the Joseph Corey case, which was my case, there was an Illinois choice of law provision, and we asserted it on behalf of New Jersey delivery drivers, almost the exact same facts. And the court found in that case, and it was affirmed by the Third Circuit, that because these workers worked in Illinois, they couldn't take advantage of a New Jersey choice of law provision, even if the contract that the company signed did it, because New Jersey doesn't apply its wage laws extraterritorially. If you accept that notion here, Your Honor, I don't believe there's any evidence that Tennessee, and we've cited some cases in other contexts, that Tennessee will not apply its laws extraterritorially, and therefore even if Tennessee law did apply, it's very likely the court would say, New Jersey law has to apply because these workers were in New Jersey, I'm not applying Tennessee law. Okay. Thank you, Counselor. Your time has run, and you'll have your rebuttal time. Thank you very much. We'll hear from the other side now. May I please the court? My name is Edna Gerasio. I'm here on behalf of the appellee respondents, Hub Group Trucking. This court should uphold the district court's decision based on its well-reasoned application of the Tennessee Supreme Court's choice of law analysis and Sixth Circuit precedent. The plaintiff's presentation to this panel focused on the interest that New Jersey State has in this matter, discussing how important worker classification is to New Jersey based on tax revenue, workers' compensation funds, New Jersey business interests. I want to start Hub Group's presentation to the court by focusing on the party's interests and intent when they entered into these commercial contracts for transportation services. The Tennessee Supreme Court has made clear that Tennessee law recognizes that the individual right of the freedom of contract is a vital aspect of personal liberty and advises that courts must, if possible, interpret contracts in a way that upholds their validity. For this reason, Sixth Circuit precedent applying Tennessee law instructs that choice of law provisions should be rigorously enforced in order to give effect to contractual rights and expectations of the parties. So if we look at the contractual rights and expectations of the parties in this case, we have that the governing contracts are these independent contractor equipment and lease agreements. Under those contracts, the lessors, here the plaintiffs, some of whom were individual drivers, but many of whom were business owners who managed fleets of drivers and owned their own vehicles that they then leased to Hub Group. Mr. Bautista, one of the plaintiffs, the named plaintiff, is one of those individuals. Can you get into the choice of law provision, though? Do you agree that Tennessee has not adopted the restatement? Yes, Your Honor. Okay. So, number one question, what is the material connection that Tennessee has to this transaction? Sure. Your Honor, as Judge Parker determined in the court below, Tennessee has a material connection here because of Hub Group's connections to Tennessee through ComTrack, which was its predecessor, was headquartered in Tennessee. And all four of the six contracts we're talking about were also executed in Tennessee. I think Your Honor raised the question earlier. I mean, other than signing the contract in Tennessee, what is the connection other than that there's a Hub Group operation in Tennessee? And I don't see how relevant that is to the transaction, given that we've got a class of New Jersey drivers. Sure. So, for here, Your Honor, the transaction are the contracts. So, for us, the fact that the contracts were executed by Hub Group in Tennessee. Okay. Do you have any cases where signing the contract alone is enough to establish a material connection? There are cases cited in our brief, Your Honor, that signing the agreement in the state is sufficient. I saw cases that said signing and negotiating, but I don't know that I came across a case that just said one side of it, signing a case in the state was enough to establish a material connection. Sure, Your Honor. So, the person who signed the agreements on behalf of Hub Group was the director of independent contractor and leasing. So, the head of this area within Hub Group Trucking. I don't have information on a motion to dismiss as to the negotiations that happened with that person or with the plaintiffs, but we know that the contracts were signed there. So, obviously, representing to the court the facts that we do have. Yes, contracts being signed if there's any negotiation. Maybe I missed this. It sounds like for one of the named plaintiffs, Hub Group's manager in Tennessee signed it. But I believe for the other plaintiff, there wasn't a Tennessee person that signed that contract. That's not correct, Your Honor. For both plaintiffs, their contracts were signed in Tennessee, at least two contracts for each plaintiff. One of the plaintiffs has been employed or not employed, excuse me, has been working for a contract and then turned Hub Group for more than 10 years. Multiple of those contracts were signed in Tennessee by either contract or Hub Group. If you have a choice of law dispute and the question is material connection and other things, are you allowed to put evidence into the record? Kind of like a personal jurisdiction, you would, even though it's a preliminary question? Obviously, the contracts are in the record, Your Honor, and those are the basis. There's no affidavit that says, I signed this contract on behalf of Hub Group and negotiated them on behalf of Hub Group. There is no affidavit. Going to Judge Matheson, and I agree, like this E-PAC Technologies case and some of the other ones, yeah, it's signed in New York, but it's pretty clear that there's some back and forth negotiation going on. I don't see any of that here. I just see this idea that they were signed in Tennessee. Yes, Your Honor. We do not have facts in the case about the negotiations, at least not before the court. With respect to the material connection prong, just to finish that out, what is before the court is that Tennessee does have a, Tennessee is an area of significant business operations for Hub, and it is the gateway that connects where the plaintiffs say they are working with the New Jersey metropolitan region and the West Coast. It is where all of that comes together. When it says that there are 250 workers there, the Director of Independent Contractor and Leasing, who again is the one who signed these contracts, it's a flagship facility for Hub Group, the gateway. These are material connections between Tennessee and this contract where it is signed by someone in Tennessee. I want to talk to Your Honors about the second prong of this analysis, which is very much covered by the Leblinsky decision, which is a Sixth Circuit decision from 2017. The Sixth Circuit panel in Leblinsky dealt with the very same choice of law clause that we are looking at today and very similar facts. The plaintiffs lived and worked in Illinois, claimed to have no connection to Tennessee, and plaintiffs' counsel in that case made the very same arguments regarding public policy of a state that has more employee-friendly wage payment laws than Tennessee. After taking all of that into consideration, the lower court and then this court rejected the plaintiffs' argument that Illinois had a material greater interest in worker classification than Tennessee and that application of Tennessee law was contrary to the public policy of Illinois. This court made clear that the relevant interest analysis was in worker classification and that the fact that Illinois law differed from Tennessee law did not mean that Illinois had a material greater interest. In evaluating whether application of Tennessee law would be contrary to a fundamental public policy of Illinois, the court stated that the absence of a Tennessee statute identical to Illinois is not sufficient to prove a significant difference. In other words, the court made the point that the fact that Tennessee valued employee and employer rights differently did not mean that Tennessee's laws were contrary to a fundamental public policy of Illinois. The same result should be found here with New Jersey law. Let me be clear. Tennessee has laws concerning independent contractors. It has laws concerning wage payments and deductions. New Jersey also permits independent contractors. They just determine whether someone is an independent contractor under a different test. You would agree that under Tennessee law, the plaintiffs could not be considered employees? That evaluation is not in our papers and before the court, Your Honor, and quite frankly, the law changed during the time period in which these individuals are claiming that they were improperly classified. So at one point, actually, I would disagree with that statement because the law in Tennessee was more akin to the ABC test that my adversary has cited to and did change to the IRS test. So at one point, I'm not sure that would be, in fact, correct. The IRS test is generally considered a more employer-friendly, so a test that to be considered an independent contractor is an easier thing to establish. There was a Tennessee statute independent of the IRS test that Tennessee adopted that there was a specific statute that says lease operators could not be considered employees. That is, I believe, under the new version of the law. Yes, Your Honor. The plaintiffs tried to distance themselves from the Leblinsky holding by arguing that the plaintiffs in Leblinsky offered nothing in support of their argument that Illinois had a material greater interest in the alleged misclassification, but that's not true. The plaintiff in Leblinsky alleged the same facts that my adversary is alleging here regarding where the plaintiff worked, where they lived, and also regarding what Illinois' public policy was with respect to independent contractors. But there's not a lot of detail in that opinion about what the differences in the legal tests, the legal schemes were. I mean, it just seems kind of conclusory. It's an unpublished opinion. It's like three pages long. Your opponents have gone through and set out some fairly comprehensive differences in the way Tennessee operates in New Jersey. It just seems like it's a different kind of analysis in this case, or at least maybe it's not, but I don't have a lot to go on from the opinion that we issued in Leblinsky. Your Honor, it is a shorter decision. I agree with that. But what that court did make clear was that the fact that Illinois law would come to a different conclusion as to whether these individuals were independent contractors or employees does not drive the analysis. The fact that once... That's a classic kind of conflict concept. I understand that. But I'm also curious about New Jersey. We're talking about people in New Jersey. The primary conduct is in New Jersey. New Jersey has an interest in regulating the people who work in New Jersey. All of that seems like part of a public policy. And I don't know... I didn't see it in the briefs, so maybe I missed it. It seems like it's a scheme that's non-waivable in certain circumstances. In the Caro case, for example, they talked about... If a contract violates public policy, then it's going to be void under this scheme. And I'm assuming that there are certain minimum standards in New Jersey you would agree that you probably can't contract out of. Things like minimum wage or overtime or basic things, right? Why is that not the problem here? I mean, that would be a strong interest in New Jersey. And if there are material differences with Tennessee law, then it's beyond just the case would come out differently. It's just a fundamental policy difference between the way New Jersey wants to regulate workers and the way Tennessee does. Yes, Your Honor. There's a difference, and I'm not sure if I'm going to be addressing your question, so if I'm not, tell me. There's a difference between a choice of law provision that's agreed to in a contract and a waiver of rights. So here, the plaintiffs agreed, along with a whole host of other benefits that they got under this contract that, quite frankly, employees do not get. They agreed, we're going to be subject to Tennessee law. And we're, in addition to that, going to get all of these additional benefits. Higher compensation, safety equipment, very favorable lease insurance payment. There was a whole host of benefits they got, and that was not a waiver of their rights. That was a choice that they chose. Yes, I agree, Tennessee law governs my rights. And I'd like to make on that point, Your Honor, that... Are you saying there's no limit to that? In other words, let's say the New Jersey minimum wage is like $15 an hour, right? Could they have agreed, oh, we're going to take $10 an hour in exchange for a bunch of other stuff. And New Jersey comes in and says, or somebody regrets that later and says, oh, wait, no, that's a violation of the New Jersey wage an hour law. And you would say, no, we're governed by Tennessee law, so we can pay you in New Jersey under the minimum wage of New Jersey. You can contract out of that. If the contract has a Tennessee choice of law provision, then, yes, I believe the parties are entitled to contract what the law is that will govern their relationship. I see my time is running short. There's just two final points I want to make before I turn the podium back over to Plaintiff's Counsel. HUB Group is a nationwide business, and the plaintiffs try to use this fact to undermine HUB Group's Tennessee choice of law provision. But as Judge Parker noted in the decision below, the fact that HUB Group is a nationwide business does not negate its Tennessee connections. Nationwide businesses routinely negotiate commercial contracts across the country with the same choice of law provisions that we have here, and that's to promote and achieve consistency, uniformity, predictability for its business operations, which is exactly what HUB Group did here. On the issue of predictability, the second point I want to make is this Court's decision in Leblinsky was in 2017, which means that in 2017, this Court affirmed that HUB Group's inclusion of a Tennessee choice of law provision in its independent contractor agreements based on the business operations that it had in Tennessee was proper, notwithstanding that it applied to workers that lived and worked outside of. There was no analysis in that case of the material connection issue, right? That Court did not address that. That was not an argument raised. That's correct. Okay. Thank you, Counsel. Rebuttal? Very briefly and quickly. First, if you look at the affidavits of Angelar and Batista that start on docket number 51-1, they both say they signed their contracts in New Jersey. They were given the contracts in New Jersey and they never set foot in Tennessee. So to answer your question, it's very unlikely that there was any negotiation that took place. What happens is my clients go in, they're onboarded, they're given a bunch of agreements to sign, and some of those were the agreements they signed. Secondly, with respect to the argument that Tennessee may have some interest because they have the right as a nationwide company to pick the state where they pick the choice of law, that's not what the cases say. There are a number of cases that say, with respect to the material connection issue, that if you're headquartered in a state, that's one factor that they'll take into account in looking at the material connection. Although, as you have pointed out, that's not what the Tennessee choice of law rule is with respect to material connection because it says material connection to the transaction, so I'm not even sure that would write. Here, what's important is there's no connection here to Tennessee. They're not headquartered in Tennessee, so they have no right to say, well, because we're headquartered somewhere, we have the right to make that the choice of law. At least there's some interest in having a company that's headquartered somewhere have application nationwide. These are trucking services, right? Right. Opposing counsel said something along the lines of how to get from New Jersey or in Byron's to the West Coast. A lot of folks come through West Tennessee and Memphis. Is that not enough? There's no evidence of that in the record. It's really absurd when you think about it because, again, these are appliances and furniture. These appliances and furniture are being presumably built by General Electric and by woodmakers in North Carolina. There's not one scintilla of evidence in the record that any piece that was delivered by my clients came from a hub in Tennessee. Finally, I do want to bring the court's attention to Robles. They're citing Lubinsky as saying, well, look, back in a number of years ago, a court, without really analysis at all, simply said the plaintiffs hadn't made a showing that there was a materially greater interest, even though we have made that showing. But in Robles, Judge Mays said very clearly, and that was back 10 years ago when they had a much better argument for Tennessee because they had just acquired a contract. Judge Mays said, I find no material connection to the transaction. Thank you, counsel. Thank you, Your Honor. Thank you both for your briefs and arguments. The case will be submitted.